UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

case# 04-361-S
05-109-S

JAMES J. SILVA
V.
A.T.WALL,et,al.

NOTICE.

Now comes the Petitioner in his Motion for Removal and hereby notifies this Honorable United States District Court that he was finally able to obtain photocopies of his motion for removal on this date, July 28, 2005 and has served copies upon both the Providence Superior Court Clerk and Attorney General Aaron Weisman by way of regular mail.

Dated July 28, 2005.

Respectfully
Submitted,

James J. Silva.

Also, enclosed please find some of The exhibits in support of This motion And The Certificate of Appealability.
J.S.

Exhibit
R.F.C.A. 1
04-170-S



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

James J. Silva and,
James R. Cayer. CASE # 04-170-S
vs
The Rhode Island Family Cart, et's al.

Pursuant To Rule 33, of The Federal Rules of Civil Procedure, The Plaintiff, James J. Silva, serves The following interrogatories on witness, Dorothy Mandeville in/re To P02-2668 A Rhode Island Divorce Civil Action which is now, 04-170-S A U.S. District Court Civil Action.

Dorothy Mandeville;

✓ (1) - Are you Legal Power of Attorney for The Plaintiff's James J. Silva?

✓ (2) - So you have intimate, detailed, and privilaged Knowledge of all his Legal matters, is That correct?

✓ (3) - Did The Plaintiff, James J. Silva ask you To appear as a witness and Testify at a Trial for divorce on May 9th 2003?

✓ (4) - Did you Travel To The Providence Family Court and were you prepared To Testify on That day, May 9th, 2003?

(5) Where you present for The entire hearing?

(6)- Were There any other witnesses present who were prepared To Testify on James Silva's behalf, and if so, Name Them?

(7)- Did Mr Silva ask Master Obrien for The appointment of Counsel as per your advice To him?

(8)- Did Master Obrien grant or Ignore That request?

(9)- Did Master Obrien ask Barbara E. Cayer if she was ready To proceed?

(10)- Did Barbara E Cayer leave The audience, walk up To counsel's Table and say; "I don't want any Things I only want a divorce?"

(11)- Did Master Obrien Then scream at Barbara E. Cayer and give her a continuance?

(12)- Did James J. Silva stand up and vehemently object To Master Obrien's not proceeding with The Trial?

(13)- Did James J. Silva vehemently object To his granting a Continuance?

(14)- Did Master Obrien walk off The bench and leave James J. Silva standing and shouting, "You can't do This your honor"?

(15)- Were you ever given The opporatunity To Testify again in Regards To This divorce?

(16)- Did you "Fax" a complaint To The A.C.L.U. on Sept. 4th, 2003 complaining That Mr Silva was being denied counsel, Notice of his appearance dates, access To his witnesses and evidence, and That he had provided you with physical evidence That his department of

Corrections Records and Court Records were being Tampered with?

✓ (17) - Did you address this "Fax", dated Sept. 4th 2003, a Thursday at 2:04 pm to the Rhode Island Affiliate of the A.C.L.U. c/o Shiela Dogherty?

✓ (18) - Did you ever recieve a reply or any help that you requested for James J. Silva from the A.C.L.U.?

✓ (19) - Having personal knowledge as his power of attorney, did Mr. Silva file motions for and ask for a Jury Trial in regards to his divorce?

✓ (20) - So the only reason you did not testify on September 3rd, 2003 is because you had no notice or opportunity to?

✓ (21) - At the time you were dealing with the A.C.L.U. and Shiela Dougherty, were you aware that the Rhode Island State Police employed Brendon and James Dougherty?

✓ (22) - Were you aware that the Rhode Island State Police and James Dougherty, tried to prevent Mr. Silva's release from prison by charging him with profanity and Disorderly Conduct, 2 charges that were later dismissed?

✓ (23) - Had James J. Silva previously in 1998 obtain, Joint Custody and Joint physical placement of his son, James R. Cayer?

(24) - Mr Silva has been incarcerated for the better part of the last 4 years, to the best of your knowledge has the

19) Yes, Mr. Silva did file a motion requesting a jury trial in regards to his divorce.

20) I was not notified of the hearing on 9-3-2003 and so could not testify on Jame's behalf.

21) No.

22) I knew he had been charged , and that all charges were later dismissed.

23) Yes, He was awarded joint custody.

24) to the best of my knowledge they have answered none of his appeals.

25)Yes.

26)The tape that the court gave to James did have muisic taped over the intire proceedings.

27) James has a court copy of the warrant of committment and the criminal docket reports, but there is no record of it in the recent copies.

28) Yes.

29) Yes, James was responceable for the greater percentage of the children's care.

30) Yes, I have answered all questions truthfully, and to the best of my knowledge, undre penalty of law.

31) Yes, I was present along with many others when Judge Daniel Procaccini told Mr. Silva that on September 26th of 2002, he was servinginNewport,R.I. , and therefore could not have heard a case concerning Mr. Silva. After Mr. Silva produced the document that contained Judge Procaccini's signature and the court seal, Judge Procaccini immediatly called a recess.

Dorothy Mandeville

Cheryl E. McKenney 11/28/

X 2/18/06

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Exhibit
P.F.C.A. 2
04-170-S

James J. Silva and,
James R. Cayer

CASE # 04-170-S

vs.

The Rhode Island Family Court, et, al.

Pursuant To Rule 33 of The Federal Rules of Civil Procedure, The Plaintiff, James J. Silva, serves The following interrogatories on witness, Lena Rancourt in/re To 6199-17051, P02-2668, and 04-170-S A U.S. District Court Civil Action.

Lena Rancourt,

✓ (1) - On May 16th 1999, Barbara E. Cayer and James J. Silva both were arrested for violating mutual Restraining Orders, on That day did James Silva ask you To Take care of The children until he or Barbara were released? This was A Sunday.

✓ (2) - On May 17th 1999, Barbara E. Cayer was released from Court, did she pick up The Children from you or did you bring The Children To her? This was Monday.

⊗ (3) - Did James J Silva spend 30 days in The A.C.I. up To and including June 14th 1999?

✓ (4) - Did your Daughter Angela, James J. Silva's Godchi visit him in minimum security and bring him Towels for his birthday?

(5) - Just prior To This in October of 1998 did

Barbara E. Cayer reside with you after being removed from The Home by The Family Court, after being charged with domestic Assault against James J. Silva?

(6) - Did you agree To be intermediary in regards To visitation?

(7) - Did James J. Silva retain, possession of The dwelling, Joint Custody, and Joint physical placement?

(8) - Have you ever seen Barbara E Cayer physically, verbally, or emotionally abuse Mr. Silva?

✓ (9) - Have you seen The Department of Corrections Records pertaining To James J. Silva?

✓ (10) - Have you noticed That The 5-16-99 To 6-14-99 30 day sentence on 6199-7051 is deleted and says "discharged From Court?"

(11) - Did James J. Silva call you as a witness recently in a Superior Court Post Conviction proceeding?

(12) - Were you present with Dorothy, Russell, Angela, Valerie, and lillian Mao when James J. Silva caught Judge Daniel Procaccini lieing from The bench?

(13) - Did Judge Daniel Procaccini Tell Mr Silva in front of all of you That he was in Newport on September 26th 2002? with Sandra Delaney?

(14) - Did Mr Silva at That Time present a Warrant of Commitment and Criminal Docket Report which proved Judge Procaccini was lieing?

(15) - Did Judge Procaccini Then call an immediate Recess?

(16) - Did Mr. Silva's Counsel, Susan Fanitelli do anything To help your brother That you observed?

(17) - Did James R. Cayer, James J. Silva's minor child recently have problems at home and run away To your house for The night?

(18) - Has he Told you who he prefers To live with, his mother, or his father?

(19) - Under The penalties of perjury, have you answered questions 1-18 fully, Truthfully, and accurately To The best of your ability and would you Take a polygraph?

Certification.

I, James J. Silva, do hereby Certify That on January 1st, 2005, I did mail a verbatim, Hand written copy of The previous 18 interrogatories To Lena Rancourt at 380 Broad St, Cumberland, R.I. 02864.

Lena Rancourt, Pursuant To Rule 33 of The Federal Rules of Civil Procedure, you are instructed To answer fully, Truthfully, accurately, and To The best of your ability The previous 18 interrogatories and return Them To plaintiff's "notarized" on or before February 1st, 2005.

James J. Silva - 66350
I.S.C. D-209-Bottom.
P.O. Box 8249
Cranston, RI

Failure To do so may result in sanctions including, being subpoenaed into The U.S. District Court, To Testify under Oath, you may be subject To Criminal or Civil Contempt as well as obstruction of Justice if A motion To Compel is filed and you still do not comply.

January 1st 2005.

Respectfully,

James J Sulan.

Pro/se

cc: The Attorney General
Clerk, U.S. District Court.

## Affidavits and Transfers to Interrogatories

1. Yes, I was asked to look after the children.
2. I do not recall whether I dropped the children off or if Barbara picked them up.
3. Yes he did.
4. Yes she did.
5. Yes she did.
6. Yes I did speak with Barbara and we did agree that I would be the Intermediary in regards to visitation. Barbara also gave me a notarized form giving me permission to take James to visit his father.
7. Yes he did.
8. Yes I have.
9. Yes I have.
10. Yes I did.
11. Yes he did.
12. Yes I was.
13. Yes he did.
14. Yes he did.
15. Yes he did.
16. From what I observed, Susan Ianitelli did nothing to help James Silva during his hearings.
17. Yes he did.
18. I did have a discussion with James Cayer he did say that because of the current problems he said he could not wait for his father to be released.
19. Yes to the best of my ability and recollection I have answered questions 1-18 truthfully and honestly.

Lena Rancourt [signature] — 1/19/05 Date

Lena Rancourt

Notary Public [signature] — 1/19/05 Date

IRIA M. MOGAYZEL
Notary Public
State of Rhode Island
My Commission Expires 2/01/07

EXHIBIT P.F.C.A. #3
04-170-S



# Rhode Island Affiliate, American Civil Liberties Union

128 Dorrance St. Providence, RI 02903
Telephone: (401)831-7171 Fax: (401)831-7175
E-mail: riaclu@aol.com

# FAX

| | | | |
|---|---|---|---|
| **To:** | Ms. Darcey Mandeville | **From:** | Sheila Doherty |
| **Fax:** | 401-728-6989 | **Pages:** | 1 (including cover sheet) |
| **Phone:** | | **Date:** | 9/4/2003 |
| **Re:** | | **CC:** | |

☐ **Urgent** ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **FYI**

● **Comments:**

Ms. Mandeville. Please send your concerns that we spoke about to our office in writing so that we may review and determine what, if any assistance our office can give you and your brother. This is our procedure for all complaints/concerns.

Regards,

Sheila Doherty

Assistant, ACLU

**To American Civil Liberties Union;**

Dear Miss Doherty;

As per our phone conversation, I am sending you a written document stating the concerns and complaints regarding James J. Silva.

First, they are preventing him from sending personal mail. My second concern is in the past they have prevented him from sending

legal documents to myself his power of attorney. On several different occasions he was denied legal representation. In some of these

court cases he is representing himself, he has no prior knowledge of his court dates and so is denied access to his witnesses, and evidence.

Inconsistancies and alterations in regards to court records and court transcrips, when brought to the attention of the judicial system they were

disregarded. The errors in dates and lengths of sentencing and changes in court records have contributed to the length of his original sentence.

When proof was brought to the attention of the court it is dismissed, and usually ends in a contempt of court charge. For every alligation or

charge James has physical evidence to back this up. I would greatly appreciate any help that this organization could give in regards to my brother

who has been incarserated for he past twenty eight months.

Sincerely,

Dorothy Mandeville

9-4-2003

COPY

American Civil Liberties Union

To: Sheila Doherty

I am writing an update concerning James J. Silva.

On 9/5/2003 I received a phone call from Mr. Silva at the A.C.I., at that time I informed him I had been in touch with your agency.

He proceeded to tell me that he had been informed that he could no longer receive soap, shampoo, or any personal hygiene products

provided by the state. When he asked why no answer was given. At this point in the phone conversation a recording broke in and said

" this phone call is being terminated".

sincerely,

Dorothy Mandeville
9-5-2003

unless the court finds that opposition was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is denied, the court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

If the motion is granted in part and denied in part, the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

(b) *Failure to Comply With Order.*

(1) *Contempt.* If a party or other witness refuses to be sworn or refuses to answer any question after being directed to do so by the court, the refusal may be considered a contempt of court.

(2) *Other Consequences.* If any party or an officer or managing agent of the party refuses to obey an order made under subdivision (a) of this rule requiring him or her to answer designated questions or to make discovery under Rule 34, or an order under Rule 35, or if a party refuses to answer designated questions after the party's objections thereto under Rule 30 have been overruled by the court, the court may make such orders in regard to the refusal as are just, and among others the following:

(i) An order that the matters regarding which the questions were asked, or the character or description of the thing or land, or the contents of the paper, or the physical or mental or blood condition sought to be examined, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(ii) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing in evidence designated documents or things or items of testimony, or from introducing evidence of physical or mental or blood condition sought to be examined;

(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(iv) In lieu of any of the foregoing orders or in addition thereto, an order directing the arrest of any party or agent of a party for disobeying any of such orders except an order to submit to a physical or mental or blood examination;

(v) Where a party has failed to comply with an order under Rule 35(a) requiring the party to produce another for examination, such orders as are listed in subdivisions (i), (ii), and (iii) of this subdivision of this rule, unless the party failing to comply shows that he or she is unable to produce such person for examination.

(c) *Expenses on Refusal to Admit.* If a party, after being served with a request under Rule 36 to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof and if the party requesting the admissions thereafter proves the genuineness of any such document or the truth of any such matter of fact, he or she may apply to the court for an order requiring the other party to pay him or her the reasonable expenses incurred in making such proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made.

(d) *Failure of Party to Attend or Serve Answers.* If a party or an officer or managing agent of a party without good cause fails (1) to appear before the officer who is to take the officer's deposition after an order for the taking of his or her deposition has been granted, or (2) to serve answers to interrogatories

Exhibit P.F.C.A. #4

5-061-40



submitted under Rule 33 after proper service of such interrogatories, the court or motion may make such orders in regard to the failure as are just, including striking out all or any part of any pleading of that party, or dismissing the action or proceeding or any part thereof, or entering judgment by default against that party. If a party fails to serve amended answers to interrogatories as required by Rule 33(c) the court may enter an order prohibiting that party from introducing evidence as to any matter which ought to have been the subject of amended answers, or the court may in its discretion pass the case on such terms and conditions as are just.

**Reporter's Notes.** The rule provides a broad range of sanctions to deal with unjustified refusals or failures to provide discovery under the preceding rules. The sanctions available to the Court range from assessment of expenses to cover the costs of motions, to striking of pleadings, to prohibiting a party from making proof, to deeming matters to be established, to the arrest of a party or witness for contempt. The choice between and application of these sanctions is placed largely in the discretion of the court. Their very existence is intended to underscore the importance of the discovery process and to discourage attorneys from ignoring their responsibility to comply with the letter and spirit of the rules. The line between resisting discovery out of honest representation of one's client and efforts to frustrate or impede proper discovery by an opponent is not always clear. Where, however, the Court discerns the latter, the rule provides appropriate sanctions to bring the miscreant to heel as well as to serve warning on other attorneys who might be like minded. As noted in the commentary on the Superior Court rule: "Leniency can be overdone, and to permit the discovery rules to be flouted without fear of retribution is to thwart rather than to promote the determination of cases on the merits. The performance of the bar must in the end determine judicial attitudes. If non-compliance with the rules is rare, the court can deal gently with the occasional transgression. If, on the other hand, such treatment leads to widespread disregard of the rules, the responsibility for correction lies with the court." Kent, Rhode Island Practice 305 (1969).

NOTES TO DECISIONS

**1. Sanctions.**

Sanctions properly imposed. See Lembo v. Lembo, 677 A.2d 414 (R.I. 1996).

Trial court did not abuse its discretion when it ordered sanctions of $ 250 per day until the ex-husband complied with discovery requests regarding his undisclosed assets and income; however, the trial court did not discontinue the sanctions soon enough as the ex-husband showed the failure to provide certain documents was due to a legitimate reason. Zaino v. Zaino, 818 A.2d 630 (R.I. 2003).

**Collateral References.** Sanctions available under Rule 37, Federal Rules of Civil Procedure, other than exclusion of expert testimony, for failure to obey discovery order not related to expert witness. 156 A.L.R. Fed. 601.

## VI. TRIALS

**38. Jury trial of right.** — (a) *Right Preserved.* The right of trial by jury as declared by Article I, Section 15 of the constitution of this state or as given by a statute shall be preserved to the parties inviolate.

(b) *Demand.* Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than ten days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

(c) *Specification of Issues.* In his or her demand a party may specify the issues which the party wishes so tried; otherwise the party shall be deemed to have demanded trial by jury for all the issues so triable. If the party has demanded trial by jury for only some of the issues, any other party within ten days after service of the demand or such lesser time as the court may order, may serve a demand for trial by jury of any other or all of the issues of fact in the action.

(d) *Waiver.* The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by the party of trial by jury. A demand for trial by jury made as herein provided may not be withdrawn without consent of the parties.

**Reporter's Notes.** This rule is identical to Super. R.C.P. 38. It provides a procedure by which a party can perfect his right to a jury trial. The rule does not itself accord a right to jury trial; it merely recognizes and establishes the mechanism for asserting whatever right which might exist under the Constitution or statutes of Rhode Island. Although the instances when a jury right exists in Family Court proceedings are relatively few, they exist in civil proceedings to commit juvenile narcotic addicts (G.L. 1956 (1969 reen- actment) § 21-28.2-7) and in proceedings in which legal relief is sought based on breach of antenuptial agreements, property settlement agreements, or contracts entered into "between persons, who at the time of execution of said contracts, were husband and wife or planned to enter into that relationship" (G.L. 1956 (1969 reenactment) § 8-10-3 (as amended by P.L. 1977, ch. 89)). The frequency of jury trials in the Family Court will depend upon the extent to which disputes arise involving contracts of this latter type.

Under the rule a party desiring a jury trial must serve a demand in writing no later than ten (10) days after service of the last pleading directed to the issue triable by jury. Failure to do so, as well as to file the demand with the court, is deemed a waiver of jury trial. The court does, however, have discretion under Rule 39(b) to order upon motion a jury trial where the parties have failed to make timely demand.

It should be noted that under G.L. 1956 (1969 reenactment) § 9-10-11.1 (as added by P.L. 1976, ch. 156), juries in civil actions may not be larger than six persons. This provision is reflected in Rule 48.

**39. Trial by jury or by the court.** — (a) *By Jury.* When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the constitution or statutes of this state.

(b) *By the Court.* Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by jury of any or all issues.

(c) *Advisory Jury and Trial by Consent.* In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury or the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

**Reporter's Notes.** This rule is identical to Super. R.C.P. 39. It provides the mechanism for administering cases where jury demands have been made and for the use of an advisory jury in actions not triable of right by a jury. Subdivision (c) further provides for the use of a jury with binding effect upon order of court and consent of the parties in cases where no right to jury inheres.

**40. Assignment of cases for trial — Continuances.** — (a) *Assignment of Cases for Trial.* Cases may be assigned for trial or other disposition to the appropriate calendar (1) by order of the court including rules of practice and general orders adopted for the purpose of assignment or (2) by written agreement of the parties filed with the clerk or (3) by motion upon notice to the adverse parties. Precedence shall be given to actions entitled thereto by statute. Unless ordered by the court, no trial of an action seeking a divorce or a separation shall commence sooner than sixty days after the action has been commenced.



(b) *Continuances.* Continuances shall be granted only upon motion and for good cause shown and upon such terms and conditions as the court shall determine.

(c) *Affidavit or Certificate in Support of Motion.* The court need not entertain any motion for a continuance based on the absence of a material witness unless such motion be supported by an affidavit which shall state the name of the witness and, if known, the witness' address, the facts to which the witness is expected to testify and the basis for such expectation, the efforts which have been made to procure the witness' attendance or deposition, and the expectation which the party has of procuring the witness' testimony or deposition at a future time. Such motion may, in the discretion of the court, be denied if the adverse party will admit that the absent witness would, if present, testify as stated in the affidavit. A motion for a continuance on the ground of sickness of a party or witness shall be accompanied by a certificate of a practicing physician stating the fact of said sickness, and the kind, degree, and the time of beginning thereof. Such motion may be denied if the moving party shall not have notified the adverse party as soon as practicable of the illness and forthcoming motion for a continuance.

**Reporter's Notes.** This rule is the same as Rule 40, Super. R. Civ. P., except for the final sentence of subdivision (a).

Essentially, the rule provides three alternative methods for placing cases on the trial calendar and anticipates adoption of a separate rule of practice spelling out the precise mechanical details for the operation of the various calendars. The last sentence reflects the existing statutory requirement of not hearing a divorce or separation case until at least sixty days have expired after commencement of suit. G.L. 1956 (1969 reenactment), § 15-5-14. Exceptions are permitted by order of court.

Subdivision (b) is the same as current practice under Rule 13 of the Family Court.

Subdivision (c) is the same as current Family Court Rule 12 except that it eliminates the requirement that where a continuance is sought on the ground of sickness, the adverse party be given an opportunity "to have an examination made of the moving party." Instead, the party moving for a continuance on this ground must accompany his motion with a "certificate of a practicing physician stating, *inter alia,* the fact of said sickness" and must give prompt notification to the other side of the illness and forthcoming motion.

**41. Dismissal of actions.** — (a) *Voluntary Dismissal; Effect Thereof.* (1) *By Plaintiff; By Stipulation.* Subject to the provisions of Rule 66(j), and of any statute of this state, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice.

(2) *By Order of Court.* Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon the defendant of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

(b) *Involuntary Dismissal; Effect Thereof.*

(1) *On Court's Own Motion.* The court may, in its discretion, dismiss any action for lack of prosecution where the action has been pending for more than five (5) years, or, at any time, for failure of the plaintiff to comply with these rules. Notice that an action will be in order for dismissal on a day certain shall be mailed to the plaintiff's attorney of record and to the plaintiff if the plaintiff's address be known. If there be no attorney of record and if the plaintiff's address is not known, such notice shall be published as directed by the court in accordance with statutory provisions.