Case 1:05-cv-00109-S-LDA Document 32 Filed 03/16/2006 Page 1 of 18

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT:

**UNITED STATES DISTRICT COURT** **ca. no. 04-361-S**

**for the DISTRICT OF RHODE ISLAND** **05-109-S**

James J. Silva V. Judge Michael Higgins, et, al.

James J. Silva V. A.T.Wall, Director of Prisons, et, al.

FILED IN CLERKS OFFICE
US COURT OF APPEALS
FOR THE FIRST CIRCUIT
2006 MAR 16 A 11:35

USCA COPY. MAILED 3-11-06

**NOTICE OF APPEAL; PETITION FOR A CERTIFICATE OF APPEALABILITY.**

This Petitioner James J. Silva, came to the United States District Court for the District of Rhode Island seeking to have his 4th, 5th, 6th, and 14th United States Constitutional Rights protected, enforced, and or vindicated. Instead once again Magistrate Judge Lincoln D. Almond who I already have under Judicial complaint #421, lies, misstates facts, and suppresses my legitimate issues and claims by substituting his own which are baseless and or easily negated by irrelavant case law.

Judge William E. Smith for the second time assists in a coverup of major proportions by signing off on Lincoln D. Almond's two R&R reports which are nothing more than a coverup of unconstitutional Rhode Island procedures and a statute.

Everyone in the Rhode Island Criminal Justice System is aware that standard operating procedure is and was to combine a **46 (g)and(e) and Rule 42(b)** hearing for both Revocation of bail and criminal contempt. The State also combines Probation Violation hearings with the **Rule 46 (g) and(e) and 42 (b)** hearing for Bail Revocation and Criminal Contempt.

I supplied the United States District Court with a copy of the Rule 46 (g) and (e) and Rule 42(b) complaint that was brought against me on September 16th, 2004. So this evidence was and is before the court.

Petitioner was prosecuted on this complaint on October 7th, and 12th, of 2004. On November 4th, of 2004, Petitioner's counsel Mark Smith, an ex-prosecutor, filed a **"motion to suspend the criminal contempt and bail revocation hearing".** This exhibit was also put before the court by asst. Attorney General, Stephen A. Regine in his memo dated 8-11-05, event #43, of case no. 04-361-S. See page 3, lines 8 and 9 footnote and attached exhibit.

On 10-7-2004 the first day of the criminal contempt and bail revocation prosecution Stephen A. Regine said, and I quote verbatim from the tape recordings;

> **"the state submits although not before this court because this is a 46(g) and the state submits a 46(e) and 42 (b) hearing for both contempt and moving to revoke bail".**

But as is also Rhode Island's standard operating procedure, these transcripts /evidence have been witheld in excess of a year. I supplied the court with a substantially verbatim copy of the relevant portions from the tapes. Accord. **Mastracchio v. Ricci, supra, 498 F2d at 1261; Clark v. Lutcher, supra, 436 F. Supp. at 1272.**

> **"lamentably, that record has significant gaps and ambiguities, most notably the absence of the juvenile Judge's decision, that render the determination of what was in fact decided. However, informed by the concern we have outlined, any doubts must be resolved in plaintiff's favor.**

Magistrate Judge Lincoln D. Almond intentionally ignored therock solid, irrefutable pieces of evidence that were and remain before the court.and is assisting in the coverup of unconstitutional procedures that are not only double-jeopardy violations but qualify as **Younger exceptions.** see (FAIN V. DUFF, 488 F2d318.)

The Double-Jeopardy Clause is written in terms of Potential or risk of trial and conviction, not punishment(***LEdHn11) BREED V. JONES, 421 U.S. 519; 95 S.CT. 1779; LEd 2d 346; EUSEBIA FERNANDEZ V. TRIAS MONGE, 586 F2d 848 (1st Cir.) citing FAIN V. DUFF,

> **"a court proceeding which may result in incarceration places a person adult or juvenile in Jeopardy".**

(United States v. Dickerson, D.D.C. (1958), 168 F. SUPP. 899 rev'd on other grounds, (1959) 106 U.S. APP. D.C. 221, 271 F2d 487: (M. v. Superior Court of Shasta County, 4 Cal. 3d 370, 482 P2d 664, 93 Cal Rptr. 752 (1971

This Petitioner and Fain were not merely asserting a Federal Defense to a State Prosecution, we are asserting a Constitutional right not to be twice put in Jeopardy for the same offense, although double-jeopardy (if shown) would certainly be a (**15) proper defense to assert at trial and in post conviction proceedings, the right consists of more than having the second conviction set aside. It consists of being protected from having to undergo the rigors and dangers of a second--illegal--trial. Double Jeopardy is not a mere defense to a criminal charge it is a right to be free from a second prosecution , not merely a second punishment for the same offense. ( though that is obviously included in the right)

the prohibition against double jeopardy is **"not against being twice punished but against being twice put in jeopardy.**

Petitioner's situation qualified as a **Younger exception** and the state concedes that a Double-Jeopardy claim if proven is a Younger eception see their own cite, 04-361-S, event#43, memorandum page 7 lines 16 and 17 as follows;

> **"*** with the notable exceptions of cases involving double jeopardy and certain speedy trial claims."**

However, even though the state included in their event #43, 04-361-S memorandum, the proof that this was a combined criminal contempt and bail revocation hearing. (see page 3 Lines 8 and 9 05-109-S, event #13 plus the attached exhibit. The State then evades and suppresses the criminal contempt issue by referring to this(these) procedures as a bail revocation hearing, only. Magistrate Judge Lincoln D. Almond not only condones but acts in furtherance of the evasion and suppression and even embellishes on it by only referring to the hearings as a **"bail-revocation"** and offers irrelevant case law in support of the State's claim that there is no double Jeopardy violation thus avoiding and or evading and or suppressing the **Younger exception.** (see R+R reports, 04-361-S page 6, footnote 1).

If Magistrate Judge Lincoln D. Almond's R+R reports recommended dismissal based upon abstention then why did he go through the trouble of making a double-jeopardy conclusion based upon an issue that was innapposite of the claim of the Petitioner? He is once again assisting in an attempted coverup of constitutional violations, un constitutional procedures,and a statute in the Rhode Island criminal justice system.

Both he and now Judge William E.Smith are involved in an attempted coverup of thousands if not tens of thousands intentional double-jeopardy violations by the rhode Island prosecutors.

In 1977 the Rhode Island Supreme Court first dealt with the problem of what powers the courts and the State had when someone who had posted bail and been released violated the conditions of that release.**(Mello v. Superior Court et,al, 117,RI. 578; 370 A2d 1262). RI. Rules of Crim. Proc. Rule 46, section (e) also provides as folows;**

> §46 (e)- violations of the terms of recognizance. in addition to other remedies provided for in this Rule or otherwise provided by law, violation

of the terms of a recognizance may be punished as a contempt of court. (also see R.I. Rule 42 (b)) criminal contempt.

From 1977 up until 2005 when I first raised this issue the State of Rhode Island was taking defendants to combined 46 (g) and 46 (e) and Rule 42 (b) hearings claiming the defendandts were only to be afforded the same minimal due process rights as a probation violation hearing and subjected the defendants to the lower burden of proof required for a bail revocation that is, reasonably satisfactory proof. Depriving these defendants of their right to be found guilty beyond a reasonanble doubt for criminal contempt. **(this petitioner provided the court with a copy of the 46 (g) and 46 (e) and 42 (b) complaint as well as 2 subsequent copies where they later changed the wording)**

The Rhode Island Supreme Court decision in Mello, only adresed a bail revocation hearing. It was in the dissenting opinion the Honorable Judge Doris suggested that a violator of the bail conditions could be punished as a criminal contempt.

The **United States v. Alvin Dixon and Michael Foster, 509 U.S. 688; 113 S. CT. 2849; 125 LEd 2d 556;(1993):**

(***LEd HR6B)(6B) we have held(hn2) constitutional protections for criminal defendants other than the double-jeopardy provision apply in non summary criminal contempt(****18) prosecutions just as they do in other criminal prosecutions. see, **e.g. Gompers v. Buck Stove and Range Co., 221 U.S. 418, 444, 55 LEd 797 31 S. Ct. 390 (1925)** (presumtion of innocence, proof beyond a reasonable doubt, and guarantee against self incrimination) **Cooke v. United States, 267 U.S. 517, 537, 69 LEd 45 S. Ct. 390 (1925).** (notice of charges, assistance of Counsel, and right to present a defense) **IN/RE Oliver, 333 U.S. 257, 278, 92 LEd 682 68 S.Ct. 499 (1948)** (public trial)

**We think it obvious and today hold that the protection of the double jeopardy clause likewise attaches.**

ACCORD; Menna v. New York, 423 U.S. 61, 46 LEd 2d 195, 96 S. Ct. 241 (1975)(per curiam) Colombo v. New York, 405 U.S. 9, 30 LEd 2d 762,,92 S. Ct. 756 (per curiam).

The State of Rhode Island, its Office of the Attorney General, and Local Prosecutors since 1977 have deprived thousands if not tens of thousands of defendants of their fullpanoply of rights and the right to be found guilty by proof beyond a reasonable doubt by combining the bail revocation and probation violation procedures with the criminal contempt prosecution thus violating their double jeopardy and due-process rights.

When I raised this argument the State of Rhode Island changed the wording in their Rule 46(g) notices as follows verbatim,
My September 16th 2004, Bail Violation and Criminal Contempt Complaint;

> **"The Atorney General now seeks to have the defendant adjudged a bail violator pursuant to Rule 46(g) of the District Court Rules of Procedure and adjudged in contempt of Court pursuant to Rule 46 (e) and Rule 42 (b) of the District Court Rules of Criminal Procedure.**

In a subsequent July 11th, 2005, Bail Violation and Criminal Contempt Complaint, case# P2003-3645A the wording was changed as follows;

> **"The Attorney General now seeks to have the recognizance cancelled pursuant to Rule 46 (g) of the Superior Court Rules of Criminal Procedure <u>and/or</u> to have the Defendant adjudged in contempt of Court pursuant to Rule 46(e) and Rule 42 (b) of the Superior Court Rules of Criminal Procedure.**

In another July 18th, 2005, Bail Violation and Criminal Contempt complaint brought by the Warwick Police Department, case# 62-2005-11556 the wording was as follows;

> **"The City of Warwick now seeks to have the recognizance cancelled and/or to have the Defendant adjudged in contempt pursuant to Rule 46 (g) of the District Court Rules of Criminal Procedure.**

Citing Oneal v. United States, 190, U.S. 36, 38, 47 LEd 945, 946, 23 S.Ct. 776 (1903) an adjudication for contempt is "in effect a Judgement in a Criminal case. Citing Harris v. Oklahoma, 433 U.S. 682; 97 S. Ct. 2912; 53 LEd 2d 1054 (1977), a person who has been tried and convicted for a crime which has various incidents included in it cannot be for a second time tried for one of those incidents without being twice put in jeopardy for the same offense.

citing(Breed v. Jones, 421 U.S. 519; 95 S.Ct. 1779; 44 LEd 2d 346; (1975) (***LEd HR11) (hn4) The Double Jeopardy Clause.... is written in terms of potential or risk of trial and conviction, not punishment. "**Price v. Georgia, 398 U.S. at 329 (emphasis added).** and we have recently noted: The policy of avoiding multiple trials has been (*533) regarded as so importanttthat exceptions to the principle(****23) have been only grudgingl allowed. citing **(Dowling v. United States, 439 U.S. 342; 110 S. Ct. 668; 107 LEd 2d 708;(1990)** an aquittal on a greater or lesser included offense, for example, bars prosecution on the other offense. **(Brown v. Ohio, 432 U.S. 54, 68-69 (1978).** This protection applies even if the aquittal is based upon an agregiously erroneous foundation. **(Fong Foo v. United States, 369 U.S. 141, 143 (1962)(per curiam);(Sanabria v. United States, 437 U.S. 54, 68-69 (1978).** In Burkes v. United States and Greene v. Massey, the Courts held that the Double Jeopardy Clause precludes retrial "once the reviewing Court has found the evidence (*41) legally insufficient" to support conviction. **Burks 437 U.S. at 18; Greene 437 U.S. at 24.** at the criminal contempt and bail revocation hearing Assistant Attorney General Stephen A. Regine's evidence was legally insufficient to sustain a conviction as he was unable to prove the defendant had entered into a recognizance thus acknowleging and obligating himself to the conditions that would effect his release on bail. citing **(United States v. Kerby Keller, 624 F2d 1154; (1980).**(hn1) the Doctrine of Collateral Estoppel as applied in Criminal cases is used to bar not only reprosecution, which the court uses insituations encompassing multiple or fragmented prosecutions, but also evidence of crimes of which the defendant had been aqitted in prior prosecutions. Distinguished by **(Pugliese v. Perrin, 567 F. Supp. 1337, (1983) U.S. Dist. (D.N.H.).**

Defendant Silva had been placed in jeopardy and was about to recieve an aquittal or finding of not guilty in/re to the prosecution of the crime of criminal contempt. The subject matter of that criminal contempt prosecution was identical to the stalking allegation against Daniel Cesario, 62-2004-18930; P205-0362A. the State was not only going to be collaterally estopped in/re to the stalking allegation the State was going to be collaterally estopped from resubmitting the letters that were entered into evidence at the criminal contempt prosecution and were the basis of the stalking allegation as the State also wanted to litigate them at the No-contact-Order prosecution of P204-3106A.

And so Assistant Attorney General Stephen A. Regine resorted to the

only things he knows, dirty court tactics, perjury, the tampering and or fabrication of court documents/evidence, and criminal activity.

On October 14th, 2004 I was transported to court on an unscheduled Court date and appeared before Magistrate William Macatee who arraigned me on a new criminal information. Mark Smith my lawyer was present and he handed me a copy of the Criminal Information P204-3106A but before I had a chance to look at it he took it back telling me he would make a copy for himself and then send me the original.

I was arraigned on the charge of violating a protection order but I had been arrested without a warrant for violating a no-contact-order issued pursuant to 12-29-4 of the R.I.G.L. that was supposedly issued by the Providence Superior Court on December 19th, 2003. No such order was ever issued on that day nor was there any criminal no-contact-orders in effect even though the **R.O.N.C.O.** records reflected at least five.

By the time I finally got a copy of the criminal information which was somewhere after November 29th, 2004, I discovered that not only had they changed the statutory offense from 12-29-4 to 15-15-3 but Detective Napolean Gonsalves who had already testified at a Bail Revocation and Criminal Contempt Prosecution and swore that I had been arrested pursuant to 12-29-3 subpart (b)(3) which allows for warrantless arrest and that he had never gone to any justice of the peace, Superior Court, or District Court Justice and asked that the affidavit for the arrest warrant that he had prepared be signed. Now in this Criminal Information P204-3106A, he swore in the affidavit and police narrative that, The defendant had been arrested on July 28th, 2004, based upon a warrant that was signed by a District Court Judge..

On November 9th, 2004, the day I was supposed to present a defense to the Criminal Contempt and Bail Revocation procedure I appeared before the Honorable Ms. Justice Moore. Assistant Attorney General Stephen A. Regine was there and so was Detective Napolean Gonsalves. Stephen Regine told Judge Moore that he had seen my Court appointed counsel, Mark Smith (who was an ex-prosecutor) and then immediately orally moved the court to withdraw the bail Violation without mentioning the criminal contempt. This was in violation of Rule 45 of the Superior Court Rules of Criminal Procedure which requires a 5 day notice prior to any motion being heard.

I immediately objected. Judge Moore noted the objection for the record and conceded that this was **obviously an appealable issue** and then allowed the State to withdraw the bail violation again whithout mentioning

the criminal contempt prosecution where the State had already presented and rested their case. This was the day I was supposed to present my defense, this was a critical stage in the proceedings, and my court appointed counsel was not present. and Judge Moore granted the State's motion to withdraw the bail violation.

I preserved on the record my claim that I had been placed in jeopardy and the Honorable Judge Moore noted that objection for the record. **(please see attached 4 page transcript.)** This defendant complained that he was being denied a defense, a final and valid Judgment, and an appeal from that final and valid judgment. At this time Judge Moore was also informed that I was about to file a Motion to Quash the Criminal Information. This was docketed by the Honorable Ms. Justice Susan Mcguirl on December 7th, 2004, the very next appearance date. The matter of whether or not Mark Smith was going to withdraw or be allowed to withdraw on case numbers 6-2004-14367 and 62-2004-18930 was left open and to this day have not been resolved. Note:: on February 3rd, 2006, the Honorable Ms. Justice Netti Vogel scheduled a hearing on a Rule 9.1 motion to dismiss. This pro/se defendant has not filed such a motion and has ordered every one of his court appointed counsel not to file one as he had already docketed his own Motion to **Quash/Dismiss the Criminal Information and Remand Back to the Sixth Division District Court.** This motion claimed numerous grounds including, vindictiveness, double-jeopardy, a Rule 5 c violation, a Gerstein violation, and that I was arrested without establishing probable cause, with no signed sworn oath and affirmation, and that no Judicial Determination of probable cause was made by a neutral and detached Judicial officer.

On February 3rd, 2006, the Honorable Ms. Associate Justice, Netti Vogel scheduled a Rule 9.1 motion to dismiss for March 7th, 2006. This petitioner is pro/se but even before I re-asserted my rights to represent myself I ordered every one of my court appointed counsel not to file a motion to dismiss under Rule 9.1 and if someone has it is a McKaskle violation. **(McKaskle v. Wiggins, 465 U.S. 168)**

There are also issues of subject matter jurisdiction. If this is not a third time Felony Domestic or one of the 2 prior alleged Domestic Convictions is ruled Unconstitutional then this is a misdemeanor not punishable by more than one year in prison and the Sixth Division District Court has original subject matter jurisdiction not the Providence Superior Court.

On February 3rd, 2006, Assistant Attorney Generals, Patrick Youngs and Stephen A. Regine for a second time prosecuted this petitioner for criminal contempt. Witnesses were called, testimony was taken, evidence was was marked as exhibits and introduced, the witnesses were cross examined, and I took the stand as part of my defense and entered my own evidence.

The State's evidence was once againnlegally insufficient to sustain a conviction however, instead of reaching a finding of not guilty or an aquittal after I had been tried and placed in jeopardy Ms. justice Vogel entered a finding of Dismissal without prejudice.

On this same day prior to the criminal contempt trial Ms. Justice Vogel finally got around to addressing some of my motions in/re to transcripts. Some of these had been filed in excess of one year. During these proceedings I demanded a response to my repeated discovery request for an alleged warrant that the State and Detective Napolean Gonsalves of the Pawtucket Police Department swore that they hadin/re to my arrest on July 28th, 2004, now criminal information # P204-3106A for which I have been continuously incarcerated in excess of 20 months.

Assistant Attorney General Stephen A. Regine in effect confessed that he and Detective Gonsalves committed perjury in their affidavit and narrative that supported criminal information P204-3106A when he admitted that there is no warrant. This petitioner has major concerns in/re to these procedures as there is never anyone in the courtroom except state emlployees or prosecutors. I have now been informed by my court appointed standby counsel who is having the tapes transcribed that the stenographer dioing the transcriptions is Ernest Dutra, a relative of Ex. Asst. Ag. Paul Dutra who was involved in my previous matters and is suspect.

Thousands if not tens of thousands of defendants have had their double jeopardy rights violated in these procedures since 1977 and this is the history. Rhode Island attorneys are telling their clients that they were only entitled to the same panoply of rights as was afforded at a probation violation hearing and that the burden of proof was reasonably satisfactory proof not beyond a reasonable doubt. Most defendants admitted to being a violator of the conditions of their bail and agreed to a 30, 60, 90, or even a 180 day sentence after which they would get their bail back. However, when they returned to the Department of Corrections to serve their sentences and await reinstatement of their bail, no sentences were reflected in the R.I.D,O.C. computers. They were then being told. "You agreed to be held for that period of time in exchange for getting your bail back.even though the 46(g) and (e) and 42 (b) complaints clearly stated and Criminal Contempt. Again the State of Rhode Island had used a violation procedure todeprive defendants of their full panoply of rights and of their right to be found guilty by proof beyond a reasonable doubt and extorted pleas,while circumventing and covering up the double jeopardy implications and or violations.

This involved virtually everyone in the Criminal Justice System, Judges, Attorney Generals, Local Prosecutors, Public Defenders, and even private attorneys. This Honorable United States Court of Appeals could not possibly be so gullable as to believe that not one member of the entire Rhode Island Criminal Justice System knew about our Honorable United States Supreme Court's decisions in **Menna v. New York, Columbo v. New York, and The United States v. Alvin Dixon and Michael Foster.**

Why? Because every Judge, Attorney General, Local Prosecutor, Public Defender, Lawyer, and every other member of the Criminal Justice System are making a living by extorting pleas in a tribunal where you are deprived of the full panoply of rights and where the burden of proof is less than beyond a reasonable doubt..

This isthe first of two huge coverups that Magistrate Judge Lincoln D. Almond and William E. Smith are attempting to pull off for their state of Rhode Island instead of enforcing the United States Constitution, the decisions of Our most Honorable United States Supreme Court,and protecting theConstitutional Rights of U.S. citizens.

**Attempted Coverup #2.**

Petitioner was arrested on July 28th, 2004, by the North Smithfield

Police without a warrant pursuant to Rhode Island General Law **12-29-3 subpart (b)(3)** as follows:

> **"an arrest without warrant made under this section shall be made within twenty four (24) hours of the alleged crime."**

On September 30th, 2004, in assigned sworn statement. Police Officer's Witness statement Detective Napolean Gonsalves swore,

> **"the defendant was taken into custody by Smithfield P.D. within the 24 hr period following the incident, in accordance with the Domestic Violence Protection Act."**

On July 29th, 2004 at the Felony Initial Appearance I recieved the Pawtucket Police Officer's Narrative of Officers Perez and Silva. Report # 04-2144-AR as follows;

> **"on 28 JL 04 at approximately 1730 hours car 209 officer Perez and Silva were dispatched to N.Smithfield station to pick up a prisoner (James J. Silva d.o.b. 5/5/53) who was wanted by our department on a 24 hour."**

On October 7th, and 12th, of 2004, at a combination Bail revocation and Criminal Contempt prosecution Pawtucket Detective Napolean Gonsalves while being questioned by Assistant Attorney General Stephen A. Regine, testified as follows; pertainant parts from the tapes;

**Asst. AG.Regine;** <u>Did you ever go to any Justice of the peace, Superior Court, or District Court Justice and ask that the warrant that you had prepared, be um signed</u>?

**Detective Gonsalves:** **<u>NO</u>.**

**Asst. AG. Regine:** <u>Regardless, whatever you put in, it was never signed?</u>

**Detective Gonsalves:** **<u>NO</u>.**

**Asst. AG. Regine:** <u>and you had no warrant</u>?

**Detective Gonsalves:** **<u>NO I DIDN'T</u>.**

This testimony on October 7th, 2004, was consistant with Detective Napolean Gonsalve's signed sworn witness statement of September 30th, 2004, as follows, pertainant parts,

> "after reviewing the report I prepared a warrant and forwarded to the prsecution unit. However, the defendant was contacted and it was arranged for him to be taken into custody. The defendant was taken

> into custody by Smithfield Pd. within the 24 hour period following the incident, in accordance with the Domestic Violence Protection Act.

Again, another reference to what Rhode Island law enforcement calls a 24 Hour. Corroboration that this petitioner had been arrested without a warrant pursuant to the Domestic Violence Protection Act's §12-29-3 section (b)(3) subpart.(b

On October 7th, 2004, my court appointed counsel, ex-prosecutor Mark Smith orally corrected his motion to dismiss by saying, (verbatim from the tapes);

> "Mr. Regineehas informed me that the arrest in question was not based on any affidavit but was based on § 12-29-3 subpart (b)(3).

On that same day October 7th, 2004, Assistant Attorney General, Stephe A. Regine argued in rebuttal. (verbatim from the tapes);

> "he wasn't arrested on that uh, affidavit, it wasn't sworn to, and counsel can't prove anything other than that to show that he was arrested on that false, that error, uh, erroneous warrant."

However, again, on that same day October 7th, 2004, Assistant Attorney General, Stephen A. Regine and Detective Napolean Gonsalves both signed and andaffidavit and narrative that supported criminal information P204-3106A in which they swore upon oath to the following;

(a) that the matters contained herein have been investigated by my Department and I have knowledge thereof and that the facts contained herein are true to the best of my knowledge;'

(b) a warrant was prepared and signed in District Court for the arrest of the Defendant for violation of a protection order. The Defendant was taken into custody based on the warrant:

Later in March and April of 2005, in response to Defendant's Rule 16 Discovery request for "all warrants which have been executed in this case and copies of all search or arrest warrants and supporting affidavits obtained." The State and AAG. Regine responded, **"none known to the State at this time."** However, also included in the State's two responses to Discovery Stephen A. Regine included the Attorney General's B.C.I. records for James J. Silva, d.o.b. 5/5/53, that reflected;

**1 7-28-2004 ARRESTED ON WARRANT NORTH SMITHFIELD**

Chief of the Attorney General's B.C.I. Division is William Devine

a relative of Pawtucket

Chief of the Attorney General's B.C.I. Division is William Devine a relative of Charles, a.k.a. Chip Devine the Pawtucket Detective I have under investigation for fabricating police reports. They were attempting to cover up the Unconstitutional arrest and Rhode Island Statute by fabricating a warrant and finding a Judge who would retroactively approve the affidavit and sign the arrest warrant.

§12-29-3 section (b)(3) has been in effect since 1988 and thousands if not tens of thousands of unconstitutional arrests have been made without a warrant while police officers arrogated themselves the authority to make the judicial determinations of probable cause to arrest by using the warrantless provision of this subsection.

On or about August 14th, 2004, I filed the first of two Federal §2254 Petitions raising Federal Questions. These were assigned case#s o4-361-M and 05-109-S. The first was assigned to U.S.D.C. Judge Mary Lisi and Magistrate Robert Lovegreen and later Magistrate David L. Martin. However as soon as Judge Mary Lisiadvised me to refile a class action in/ re to 04-361-M she withdrew without explanation and Magistrate Judge Lincoln D. Almond and Judge William E. Smith took over.

Now Magistrate Judge Lincoln D. ALmond and Judge William E. Smith were once again in aposition to cover up the Unconstitutional Statute and arrests for the State of Rhode Island. This manuevering resembles Judge shopping and does not avoid the appearance of impropriety.

Assistant Rhode Island Attorney General Stephen A. Regine's voluminous lies are uncoverable but that did not stop Magistrate Judge Lincoln D. Almond from trying,

(a) Stephen Regine in two memos, event#43 of 04-361-S and event#12 of 05-109-S page 1 footnote 2 Lies,

> "to the best of his knowledge and belief, I was taken to the Pawtucket Police Station by the North Smithfield Police."

Magistrate Judge Lincoln D. Almond took this lie one step further and ebellished it to,

> "I voluntarily entered the Pawtucket Police Station."

(b) Stephen Regine does not mention the criminal contempt adjudicatio that he sought and only refers to that previous procedure as a bail revocation procedure. Magistrate Judge Lincoln D. Almond then follows his lead and cites case law which only pertains to bail revocation even though Stephen Regine himself supplied the court in both memos with

my attorney Mark Smith's,

**"Motion to Suspend the Criminal Contempt and Bail Revocation Hearing."**

At the time of my arrest on July 28th,2004, at approximately 5:09 pm. I was at home minding my own bussiness. There were no exingent or emergency circumstances that would justify a warrantless arrest. Detective Napolean Gonsalves had no warrant, had no oath or affirmation, had no complaint in writing, did not bother toocorroborate or not corroborate Barbara E. Cayer's story, and did not even bother to establish probable cause because §12-29-3 section (b)(3) allowed him to circumvent those Constitutional requirements.

I have since been held in pretrial confinement in excess of twenty (20) months even though no prompt, fair, or reliable determination of probable cause has ever been made by a neutral and detached judicial officer.

The Fourth U.S.C.A. Amendment is as follows;

> **The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause supported by oath or affirmation describing the place to be searched, and the person or things to be seized.**

Article 1 section 6 of the Rhode Island Constitution, the Fourth Amendment's counterpart, is as follows;

> **The right of the people to be secure in their persons, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but on complaint in writing, upon probable cause, supported by oath or affirmation and describing as nearly as may be the person or thing to be siezed.**

Article 1 section 6 of the Rhode Island Constitution is as follows;

> **this Constitution shall be the supreme Law of the State, and any law inconsistant therewith shall be void.**

Article 6 of the United States Constitution is as follows, pertainant parts;

> **This constitution and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the Supreme law of the land -----**

**and the judges in every shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding.**

**The senators and representatives before mentioned, and the members of the several state legislatures, and all executives and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation to support this Constitution;**

I believe it is clear that § 12-29-3 subpart (b)(3) circunvents and supplants the Fourt Amendment's requirements as well as the Rhode Island Counterpart Article 6ssection 1.

**Constitutional Law (--- 36.**
**Duty of Legislature to obey constitutional mandate.**
a statute or rule cannot circumvent or supplant Constitutional requirements. (United States Currency, 183 ARIZ. @ 213, 902 P2d @ 356.

**N.D. Ala. 1999** It is fundamental aspect of Alabama Jurisprudence that legislature may not by statute modify, alter, or amend a Constitutional right.
**In re Robinson, 240 B.R. 70.**

It appears that the Rhode Island legislature passed a statute or at least a subpart thereof that circumvents and supplants United States and Rhode Island Constitutional requirements.

It appears that § 12-29-3 subpart (b)(3) not only circumvents and supplants the Constitutional requirements of the Fourt Amendment of the United States Constitution, Article 1 section 6 of the Rhode Island Covstitution, but also is in conflict with Rule 3 of the District and Superior Court Rules of Criminal Procedure as follows;

**3. The complaint.-- The complaint is a written statement setting forth the offense charged. It shall be made upon oath before a judge of the District Court or an officer**

**empowered to issue warrants against persons charged with committing criminal offenses. If the defendant is not in custody or before the court, the judge or other officer shall examine under oath the complainant and any witnesses he or she may produce, and shall require their statements be reduced to writing and sworn to by the persons making them.**

When there is a conflict between the Rule and a Statute the Rule prevails.

**8-6-2 Rules of practice and procedure.--(a)** The Supreme Court the Superior Court, and the District Court, by a majority of their members, shall have the power to make rules for regulating practice, procedure, and business therein. The Rules of the superior, family, and districy court shall be subject to the approval of the supreme court, such rules when effective, shall supersede any statutory regulation in conflict therewith.

If this petitioner is in fact correct then § 12-29-3 subpart (b)(3) is not only contrary to and an unreasonable application of the Constitutional requirements of the Fourth Amendment to the United States Constitution and Article 1 section 6 of the Rhode Island Constitution, its counterpart but is also in conflict with Rule 3 of the Rules of Criminal Procedure for both the District and Superior Courts of Rhode Island.

[W]herefore, petitioner moves this honorable court to grant his petition for a certificate of appealability. Once again the Honorable Judge William E. Smith has not responded to my notice of appeal and certificate of appaelability nor have the clerks provided me with any denials as required by the Rules.

This petitioner has been arrested and held in pretrial confinement for over 20 months in violation of the Fourth U.S. Contitutional Amendment which requires a prompt, reliable, and fair determination of probable cause.

DATED MARCH 5, 2006. Respectfully

DATED MARCH 5, 2006.

Respectfully
Submitted,

James J Silva

**:CERTIFICATION:**

I do hereby certify that on this the _____ day of __________ __________ I did cause to be mailed a true and accurate copy of the enclosed 15 page document to the Office of the Attorney General at 150 South Main Street, Providence, Rhode Island. 02903.

______________________

THE R.I. DEPT. OF CORRECTIONS IS LIMITING ME TO 20 PHOTOCOPIES PER WEEK. SO I WILL NOT BE ABLE TO MAIL THE ATTORNEY GENERAL THEIR COPY FOR TWO WEEKS. 3-11-06 James J Silva

3-11-06

Dear Clerk, ORIGINAL

The Rhode Island Department of Corrections is doing everything they can to delay frustrate, or impede my access to the courts.

I am only being allowed 20 photocopies per week.

Could you please photocopy this and return a copy to me so I can serve it upon the Attorney General.

Thank you

James J. Silva [signature]

FILED IN CLERKS OFFICE
US COURT OF APPEALS
FOR THE FIRST CIRCUIT
MAR 16 A 10: 3[illegible]

James J. Silva - 66350
ISC H-105-B
PO Box 8249
Cranston RI
02920