**FOR THE FIRST CIRCUIT:**

**UNITED STATES DISTRICT COURT** **ca. no. 04-361-S**

**for the DISTRICT OF RHODE ISLAND** **05-109-S**

FILED IN CLERKS OFFICE US COURT OF APPEALS FOR THE FIRST CIRCUIT
2006 MAR 16 A 11:35

James J. Silva V. Judge Michael Higgins, et, al.
James J. Silva V. A.T.Wall, Director of Prisons, et, al.

USCA COPY. MAILED 3-17-06

**NOTICE OF APPEAL; PETITION FOR A CERTIFICATE OF APPEALABILITY.**

This Petitioner James J. Silva, came to the United States District Court for the District of Rhode Island seeking to have his 4th, 5th, 6th, and 14th United States Constitutional Rights protected, enforced, and or vindicated. Instead once again Magistrate Judge Lincoln D. Almond who I already have under Judicial complaint #421, lies, misstates facts, and suppresses my legitimate issues and claims by substituting his own which are baseless and or easily negated by irrelavant case law.

Judge William E. Smith for the second time assists in a coverup of major proportions by signing off on Lincoln D. Almond's two R&R reports which are nothing more than a coverup of unconstitutional Rhode Island procedures and a statute.

Everyone in the Rhode Island Criminal Justice System is aware that standard operating procedure is and was to combine a **46 (g)and(e) and Rule 42(b)** hearing for both Revocation of bail and criminal contempt. The State also combines Probation Violation hearings with the **Rule 46 (g) and(e) and 42 (b)** hearing for Bail Revocation and Criminal Contempt.

I supplied the United States District Court with a copy of the Rule 46 (g) and (e) and Rule 42(b) complaint that was brought against me on September 16th, 2004. So this evidence was and is before the court.

Petitioner was prosecuted on this complaint on October 7th, and 12th, of 2004. On November 4th, of 2004, Petitioner's counsel Mark Smith, an ex-prosecutor, filed a **"motion to suspend the criminal contempt and bail revocation hearing"**. This exhibit was also put before the court by asst. Attorney General, Stephen A. Regine in his memo dated 8-11-05, event #43, of case no. 04-361-S. See page 3, lines 8 and 9 footnote and attached exhibit.

On 10-7-2004 the first day of the criminal contempt and bail revocation prosecution Stephen A. Regine said, and I quote verbatim from the tape recordings;

**"the state submits although not before this court because this is a 46(g) and the state submits a 46(e) and 42 (b) hearing for both contempt and moving to revoke bail".**

But as is also Rhode Island's standard operating procedure, these transcripts /evidence have been witheld in excess of a year. I supplied the court with a substantially verbatim copy of the relevant portions from the tapes. Accord. **Mastracchio v. Ricci, supra, 498 F2d at 1261; Clark v. Lutcher, supra, 436 F. Supp. at 1272.**

> **"lamentably, that record has significant gaps and ambiguities, most notably the absence of the juvenile Judge's decision, that render the determination of what was in fact decided. However, informed by the concern we have outlined, any doubts must be resolved in plaintiff's favor.**

Magistrate Judge Lincoln D. Almond intentionally ignored therock solid, irrefutable pieces of evidence that were and remain before the court.and is assisting in the coverup of unconstitutional procedures that are not only double-jeopardy violations but qualify as **Younger exceptions.** see (FAIN V. DUFF, 488 F2d318.)

The Double-Jeopardy Clause is written in terms of Potential or risk of trial and conviction, not punishment(***LEdHn11) BREED V. JONES, 421 U.S. 519; 95 S.CT. 1779; LEd 2d 346; EUSEBIA FERNANDEZ V. TRIAS MONGE, 586 F2d 848 (1st Cir.) citing FAIN V. DUFF,

> **"a court proceeding which may result in incarceration places a person adult or juvenile in Jeopardy".**

(United States v. Dickerson, D.D.C. (1958), 168 F. SUPP. 899 rev'd on other grounds, (1959) 106 U.S. APP. D.C. 221, 271 F2d 487: (M. v. Superior Court of Shasta County, 4 Cal. 3d 370, 482 P2d 664, 93 Cal Rptr. 752 (1971

This Petitioner and Fain were not merely asserting a Federal Defense to a State Prosecution, we are asserting a Constitutional right not to be twice put in Jeopardy for the same offense, although double-jeopardy (if shown) would certainly be a (**15) proper defense to assert at trial and in post conviction proceedings, the right consists of more than having the second conviction set aside. It consists of being protected from having to undergo the rigors and dangers of a second--illegal--trial. Double Jeopardy is not a mere defense to a criminal charge it is a right to be free from a second prosecution , not merely a second punishment for the same offense. ( though that is obviously included in the right)

**the prohibition against double jeopardy is "not against being twice punished but against being twice put in jeopardy.**

Petitioner's situation qualified as a **Younger exception** and the state concedes that a Double-Jeopardy claim if proven is a Younger eception see their own cite, 04-361-S, event#43, memorandum page 7 lines 16 and 17 as follows;

> **"*** with the notable exceptions of cases involving double jeopardy and certain speedy trial claims."**

However, even though the state included in their event #43, 04-361-S memorandum, the proof that this was a combined criminal contempt and bail revocation hearing. (see page 3 Lines 8 and 9 05-109-S, event #13 plus the attached exhibit. The State then evades and suppresses the criminal contempt issue by referring to this(these) procedures as a bail revocation hearing, only. Magistrate Judge Lincoln D. Almond not only condones but acts in furtherance of the evasion and suppression and even embellishes on it by only referring to the hearings as a "**bail-revocation**" and offers irrelevant case law in support of the State's claim that there is no double Jeopardy violation thus avoiding and or evading and or suppressing the **Younger exception.** (see R+R reports, 04-361-S page 6, footnote 1).

If Magistrate Judge Lincoln D. Almond's R+R reports recommended dismissal based upon abstention then why did he go through the trouble of making a double-jeopardy conclusion based upon an issue that was innapposite of the claim of the Petitioner? He is once again assisting in an attempted coverup of constitutional violations, un constitutional procedures,and a statute in the Rhode Island criminal justice system.

Both he and now Judge William E.Smith are involved in an attempted coverup of thousands if not tens of thousands intentional double-jeopardy violations by the rhode Island prosecutors.

In 1977 the Rhode Island Supreme Court first dealt with the problem of what powers the courts and the State had when someone who had posted bail and been released violated the conditions of that release.(**Mello v. Superior Court et,al, 117,RI. 578; 370 A2d 1262). RI. Rules of Crim. Proc. Rule 46, section (e) also provides as folows;**

> 46 (e)- violations of the terms of recognizance. in addition to other remedies provided for in this Rule or otherwise provided by law, violation

Case 1:05-cv-00109-S Document 30-3 Filed 04/04/2006 Page 4 of 25

of the terms of recognizance may be punished as a contempt of court. (also see R.I. Rule 42 (b)) criminal contempt.

From 1977 up until 2005 when I first raised this issue the State of Rhode Island was taking defendants to combined 46 (g) and 46 (e) and Rule 42 (b) hearings claiming the defenfandts were only to be afforded the same minimal due process rights as a probation violation hearing and subjected the defendants to the lower burden of proof required for a bail revocation that is, reasonably satisfactory proof. Depriving these defendants of their right to be found guilty beyond a reasonanble doubt for criminal contempt. **(this petitioner provided the court with a copy of the 46 (g) and 46 (e) and 42 (b) complaint as well as 2 subsequent copies where they later changed the wording)**

The Rhode Island Supreme Court decision in Mello, only adresed a bail revocation hearing. It was in the dissenting opinion the Honorable Judge Doris suggested that a violator of the bail conditions could be punished as a criminal contempt.

The **United States v. Alvin Dixon and Michael Foster, 509 U.S. 688; 113 S. CT. 2849; 125 LEd 2d 556;(1993):**

> (***LEd HR6B)(6B) we have held(hn2) constitutional protections for criminal defendants other than the double-jeopardy provision apply in non summary criminal contempt(****18) prosecutions just as they do in other criminal prosecutions. see, e.g. **Gompers v. Buck Stove and Range Co., 221 U.S. 418, 444, 55 LEd 797 31 S. Ct. 390 (1925)** (presumtion of innocence, proof beyond a reasonable doubt, and guarantee against self incrimination) **Cooke v. United States, 267 U.S. 517, 537, 69 LEd 45 S. Ct. 390 (1925).** (notice of charges, assistance of Counsel, and right to present a defense) **IN/RE Oliver, 333 U.S. 257, 278, 92 LEd 682 68 S.Ct. 499 (1948)** (public trial)
>
> **<u>We think it obvious and today hold that the protection of the double jeopardy clause likewise attaches.</u>**

ACCORD; Menna v. New York, 423 U.S. 61, 46 LEd 2d 195, 96 S. Ct. 241 (1975)(per curiam) Colombo v. New York, 405 U.S. 9, 30 LEd 2d 762,,92 S. Ct. 756 (per curiam).

Case 1:04-cv-00361-S Document 69-3 Filed 04/04/2006 Page 5 of 25

The State of Rhode Island, its Office of the Attorney General, and Local Prosecutors since 1977 have deprived thousands if not tens of thousands of defendants of their fullpanoply of rights and the right to be found guilty by proof beyond a reasonable doubt by combining the bail revocation and probation violation procedures with the criminal contempt prosecution thus violating their double jeopardy and due-process rights.

When I raised this argument the State of Rhode Island changed the wording in their Rule 46(g) notices as follows verbatim,
My September 16th 2004, Bail Violation and Criminal Contempt Complaint;

> **"The Atorney General now seeks to have the defendant adjudged a bail violator pursuant to Rule 46(g) of the District Court Rules of Procedure and adjudged in contempt of Court pursuant to Rule 46 (e) and Rule 42 (b) of the District Court Rules of Criminal Procedure.**

In a subsequent July 11th, 2005, Bail Violation and Criminal Contempt Complaint, case# P2003-3645A the wording was changed as follows;

> **"The Attorney General now seeks to have the recognizance cancelled pursuant to Rule 46 (g) of the Superior Court Rules of Criminal Procedure <u>and/or</u> to have the Defendant adjudged in contempt of Court pursuant to Rule 46(e) and Rule 42 (b) of the Superior Court Rules of Criminal Procedure.**

In another July 18th, 2005, Bail Violation and Criminal Contempt complaint brought by the Warwick Police Department, case# 62-2005-11556 the wording was as follows;

> **"The City of Warwick now seeks to have the recognizance cancelled and/or to have the Defendant adjudged in contempt pursuant to Rule 46 (g) of the District Court Rules of Criminal Procedure.**

Citing Oneal v. United States, 190, U.S. 36, 38, 47 LEd 945, 946, 23 S.Ct. 776 (1903) an adjudication for contempt is "in effect a Judgement in a Criminal case. Citing Harris v. Oklahoma, 433 U.S. 682; 97 S. Ct. 2912; 53 LEd 2d 1054 (1977), a person who has been tried and convicted for a crime which has various incidents included in it cannot be for a second time tried for one of those incidents without being twice put in jeopardy for the same offense.

citing(Breed v. Jones, 421 U.S. 519; 95 S.Ct. 1779; 44 L.Ed 2d 346; (1975) (***LEd HR11) (hn4) The Double Jeopardy Clause.... is written in terms of potential or risk of trial and conviction, not punishment. **"Price v. Georgia, 398 U.S. at 329 (emphasis added).** and we have recently noted: The policy of avoiding multiple trials has been (*533) regarded as so importantthat exceptions to the principle(****23) have been only grudgingl allowed. citing **(Dowling v. United States, 439 U.S. 342; 110 S. Ct. 668; 107 LEd 2d 708;(1990)** an aquittal on a greater or lesser included offense, for example, bars prosecution on the other offense. **(Brown v. Ohio, 432 U.S. 54, 68-69 (1978).** Thisprotection appliesteven if the aquittal is based upon an agregiously erroneous foundation. **(Fong Foo v. United States, 369 U.S. 141, 143 (1962)(per curiam);(Sanabria v. United States; 437 U.S. 54, 68-69 (1978).** In Burkes v. United States and Greene v. Massey, the Courts held that the Double Jeopardy Clause precludes retriall"once the reviewing Court has found the evidence (*41) legally insufficient" to support conviction. **Burks 437 U.S. at 18; Greene 437 U.S. at 24.** at the criminal contempt and bail revocation hearing Assistant Attorney General Stephen A. Regine's evidence was legally insufficient to sustain a convict-ion as he was unable to prove the defendant had entered into a recognizanc thus acknowleging and obligating himself to the conditions that would effect his release on bail. citing **(United States v. Kerby Keller, 624 F2d 1154; (1980).**(hn1) the Doctrine of Collateral Estoppel as applied in Criminal cases is used to bar not only reprosecution, which the court uses insituations encompassing multiple or fragmented prosecutions, but also evidence of crimes of which the defendant had been aqitted in prior prosecutions. Distingnished by **(Pugliese v. Perrin, 567 F. Supp. 1337, (1983) U.S. Dist. (D.N.H.).**

Defendant Silva had been placed in jeopardy and was about to recieve an aquittal or finding of not guilty in/re to the prosecution of the crime of criminal contempt. The subject matter of that criminal contempt prosec ution was identical to the stalking allegation against Daniel Cesario, 62-2004-18930; P205-0362A. the State was not only going to be collat-erally estopped in/re to the stalking allegation the State was going to be collaterally estopped from resubmitting the letters that were entered into evidence at the criminal contempt prosecution and were the basis of the stalking allegation as the State also wanted to litigate them at the No-contact-Order prosecution of P204-3106A.

And so Assistant Attorney General Stephen A. Regine resorted to the

Case 1:04-cv-00361-S Document 69-3 Filed 04/04/2006 Page 7 of 25

only things he knows, dirty court tactics, perjury, the tampering and or fabrication of court documents/evidence, and criminal activity.

On October 14th, 2004 I was transported to court on an unscheduled Court date and appeared before Magistrate William Macatee who arraigned me on a new criminal information. Mark Smith my lawyer was present and he handed me a copy of the Criminal Information P204-3106A but before I had a chance to look at it he took it back telling me he would make a copy for himself and then send me the original.

I was arraigned on the charge of violating a protection order but I had been arrested without a warrant for violating a no-contact-order issued pursuant to 12-29-4 of the R.I.G.L. that was supposedly issued by the Providence Superior Court on December 19th, 2003. No such order was ever issued on that day nor was there any criminal no-contact-orders in effect even though the R.O.N.C.O. records reflected at least five.

By the time I finally got a copy of the criminal information which was somewhere after November 29th, 2004, I discovered that not only had they changed the statutory offense from 12-29-4 to 15-15-3 but Detective Napolean Gonsalves who had already testified at a Bail Revocation and Criminal Contempt Prosecution and swore that I had been arrested pursuant to 12-29-3 subpart (b)(3) which allows for warrantless arrest and that he had never gone to any justice of the peace, Superior Court, or District Court Justice and asked that the affidavit for the arrest warrant that he had prepared be signed. Now in this Criminal Information P204-3106A, he swore in the affidavit and police narrative that, The defendant had been arrested on July 28th, 2004, based upon a warrant that was signed by a District Court Judge,.

On November 9th, 2004, the day I was supposed to present a defense to the Criminal Contampt and Bail Revocation procedure I appeared before the Honorable Ms. Justice Moore. Assistant Attorney General Stephen A. Regine was there and so was Detective Napolean Gonsalves. Stephen Regine told Judge Moore that he had seen my Court appointed counsel, Mark Smith (who was an ex-prosecutor) and then immediately orally moved the court to withdraw the bail Violation without mentioning the criminal contempt. This was in violation of Rule 45 of the Superior Court Rules of Criminal Procedure which requires a 5 day notice prior to any motion being heard.

I immediately objected. Judge Moore noted the objection for the record and conceded that this was **obviously an appealable issue** and then allowed the State to withdraw the bail violation again whithout mentioning

Case 1:04-cv-00361-S Document 69-3 Filed 04/04/2006 Page 8 of 25

the criminal contempt prosecution where the State had already presented and rested their case. This was the day I was supposed to present my defense, this was a critical stage in the proceedings, and my court appointed counsel was not present. and Judge Moore granted the State's motion to withdraw the bail violation.

I preserved on the record my claim that I had been placed in jeopardy and the Honorable Judge Moore noted that objection for the record. **(please see attached 4 page transcript.)** This defendant complained that he was being denied a defense, a final and valid Judgment, and an appeal from that final and valid judgment. At this time Judge Moore was also informed that I was about to file a Motion to Quash the Criminal Information. This was docketed by the Honorable Ms. Justice Susan Mcguirl on December 7th, 2004, the very next appearance date. The matter of whether or not Mark Smith was going to withdraw or be allowed to withdraw on case numbers 6-2004-14367 and 62-2004-18930 was left open and to this day have not been resolved. Note:: on February 3rd, 2006, the Honorable Ms. Justice Netti Vogel scheduled a hearing on a Rule 9.1 motion to dismiss. This pro/se defendant has not filed such a motion and has ordered every one of his court appointed counsel not to file one as he had already docketed his own Motion to **Quash/Dismiss the Criminal Information and Remand Back to the Sixth Division District Court.** This motion claimed numerous grounds including, vindictiveness, double-jeopardy, a Rule 5 c violation, a Gerstein violation, and that I was arrested without establishing probable cause, with no signed sworn oath and affirmation, and that no Judicial Determination of probable cause was made by a neutral and detached Judicial officer.

On February 3rd, 2006, the Honorable Ms. Associate Justice, Netti Vogel scheduled a Rule 9.1 motion to dismiss for March 7th, 2006. This petitioner is pro/se but even before I re-asserted my rights to represent myself I ordered every one of my court appointed counsel not to file a motion to dismiss under Rule 9.1 and if someone has it is a McKaskle violation. **(McKaskle v. Wiggins, 465 U.S. 168)**

There are also issues of subject matter jurisdiction. If this is not a third time Felony Domestic or one of the 2 prior alleged Domestic Convictions is ruled Unconstitutional then this is a misdemeanor not punishable by more than one year in prison and the Sixth Division District Court has original subject matter jurisdiction not the Providence Superior Court.

On February 3rd, 2006, Assistant Attorney Generals, Patrick Youngs and Stephen A. Regine for a second time prosecuted this petitioner for criminal contempt. Witnesses were called, testimony was taken, evidence was was marked as exhibits and introduced, the witnesses were cross examined, and I took the stand as part of my defense and entered my own evidence.

The State's evidence was once againlegally insufficient to sustain a conviction however, instead of reaching a finding of not guilty or an aquittal after I had been tried and placed in jeopardy Ms. justice Vogel entered a finding of Dismissal without prejudice.

On this same day prior to the criminal contempt trial Ms. Justice Vogel finally got around to addressing some of my motions in/re to trans-cripts. Some of these had been filed in excess of one year. During these proceedings I demanded a response to my repeated discovery request for an alleged warrant that the State and Detective Napolean Gonsalves of the Pawtucket Police Department swore that they hadin/re to my arrest on July 28th, 2004, now criminal information # P204-3106A for which I have been continuously incarcerated in excess of 20 months.

Assistant Attorney General Stephen A. Regine in effect confessed that he and Detective Gonsalves committed perjury in their affidavit and narrative that supported criminal information P204-3106A when he admitted that there is no warrant. This petitioner has major concerns in/re to these procedures as there is never anyone in the courtroom except state emlployees or prosecutors. I have now been informed by my court appointed standby counsel who is having the tapes transcribed that the stenographer dioing the transcriptions is Ernest Dutra, a relative of Ex. Asst. Ag. Paul Dutra who was involved in my previous matters and is suspect.

Thousands if not tens of thousands of defendants have had their double jeopardy rights violated in these procedures since 1977 and this is the history. Rhode Island attorneys are telling their clients that they were only entitled to the same panoply of rights as was afforded at a probation violation hearing and that the burden of proof was reasonably satisfactory proof not beyond a reasonable doubt. Most defendants admitted to being a violator of the conditions of their bail and agreed to a 30, 60, 90, or even a 180 day sentence after which they would get their bail back. However, when they returned to the Department of Corrections to serve their sentences and await reinstatement of their bail, no sentences were reflected in the R.I.D.O.C. computers. They were then being told. "You agreed to be held for that period of time in exchange for getting your bail back.even though the 46(g) and (e) and 42 (b) complaints clearly stated and Criminal Contempt. Again the State of Rhode Island had used a violation procedure todeprive defendants of their full panoply of rights and of their right to be found guilty by proof beyond a reasonable doubt and extorted pleas,while circumventing and covering up the double jeopardy implications and or violations.

This involved virtually everyone in the Criminal Justice System, Judges, Attorney Generals, Local Prosecutors, Public Defenders, and even private attorneys. This Honorable United States Court of Appeals could not possibly be so gullable as to believe that not one member of the entire Rhode Island Criminal Justice System knew about our Honorable United States Supreme Court's decisions in **Menna v. New York, Columbo v. New York, and The United States v. Alvin Dixon and Michael Foster.**

Why? Because every Judge, Attorney General, Local Prosecutor, Public Defender, Lawyer, and every ~~other~~ member of the Criminal Justice System are making a living by extorting pleas in a tribunal where you are deprived of the full panoply of rights and where the burden of proof is less than beyond a reasonable doubt..

This isthe first of two huge coverups that Magistrate Judge Lincoln D. Almond and William E. Smith are attempting to pull off for their state of Rhode Island instead of enforcing the United States Constitution, the decisions of Our most Honorable United States Supreme Court,and protecting theConstitutional Rights of U.S. citizens.

**Attempted Coverup #2.**

Petitioner was arrested on July 28th, 2004, by the North Smithfield

Case 1:04-cv-00361-S Document 69-3 Filed 04/04/2006 Page 11 of 25

Police without a warrant pursuant to Rhode Island General Law 12-29-3 subpart (b)(3) as follows:

"an arrest without warrant made under this section shall be made within twenty four (24) hours of the alleged crime."

On September 30th, 2004, in assigned sworn statement. Police Officer's Witnessvstatement Detective Napolean Gonsalves swore,

"the defendant was taken into custody by Smithfield P.D. within the 24 hr period following the incident, in accordance with the Domestic Violence Protection Act."

On July 29th, 2004 at the Felony Initial Appearance I recieved the Pawtucket Police Officer's Narrative of Officers Perez and Silva. Report # 04-2144-AR as follows;

"on 28 JL 04 at approximately 1730 hours car 209 officer Perez and Silva were dispatched to N.Smithfield station to pick up a prisoner (James J. Silva d.o.b. 5/5/53) who was wanted by our department on a 24 hour."

On October 7th, and 12th, of 2004, at a combination Bail revocation and Criminal Contempt prosecution Pawtucket Detective Napolean Gonsalves while being questioned by Assistant Attorney General Stephen A. Regine, testified as follows; pertainant parts from the tapes;

**Asst. AG.Regine;** Did you ever go to any Justice of the peace, Superior Court, or District Court Justice and ask that the warrant that you had prepared, be um signed?

**Detective Gonsalves:** NO.

**Asst. AG. Regine:** Regardless, whatever you put in, it was never signed?

**Detective Gonsalves:** NO.

**Asst. AG. Regine:** and you had no warrant?

**Detective Gonsalves:** NO I DIDN'T.

This testimony on October 7th, 2004, was consistant with Detective Napolean Gonsalve's signed sworn witness statement of September 30th, 2004, as follows, pertainant parts,

"after reviewing the report I prepared a warrant and forwarded to the prsecution unit. However, the defendant was contacted and it was arranged for him to be taken into custody. The defendant was taken

into custody by Smithfield PD within the 24 hour period following the incident, in accordance with the Domestic Violence Protection Act.

Again, another reference to what Rhode Island law enforcement calls a 24 Hour. Corroboration that this petitioner had been arrested without a warrant pursuant to the Domestic Violence Protection Act's §12-29-3 section (b)(3) subpart.(b

On October 7th, 2004, my court appointed counsel, ex-prosecutor Mark Smith orally corrected his motion to dismiss by saying, (verbatim from the tapes);

> "Mr. Regineehas informed me that the arrest in question was not based on any affidavit but was based on § 12-29-3 subpart (b)(3).

On that same day October 7th, 2004, Assistant Attorney General, Stephe A. Regine argued in rebuttal. (verbatim from the tapes);

> "he wasn't arrested on that uh, affidavit, it wasn't sworn to, and counsel can't prove anything other than that to show that he was arrested on that false, that error, uh, erroneous warrant.".

However, again, on that same day October 7th, 2004, Assistant Attorney General, Stephen A. Regine and Detective Napolean Gonsalves both signed and andaffidavit and narrative that supported criminal information P204-3106A in which they swore upon oath to the following;

(a) that the matters contained herein have been investigated by my Department and I have knowledge thereof and that the facts contained herein are true to the best of my knowledge;'

(b) a warrant was prepared and signed in District Court for the arrest of the Defendant for violation of a protection order. The Defendant was taken into custody based on the warrant:

Later in March and April of 2005, in response to Defendant's Rule 16 Discovery request for "all warrants which have been executed in this case and copies of all search or arrest warrants and supporting affidavits obtained." The State and AAG. Regine responded, **"none known to the State at this time."** However, also included in the State's two responses to Discovery Stephen A. Regine included the Attorney General's B.C.I. records for James J. Silva, d.o.b. 5/5/53, that reflected;

<u>1 7-28-2004 **ARRESTED ON WARRANT** **NORTH SMITHFIELD**</u>

Chief of the Attorney General's B.C.I. Division is William Devine a relative of Pawtucket

Chief of the Attorney General's Brother William Devine a relative of [illegible] Charles, a.k.a. Chip Devine the Pawtucket Detective I have under investigation for fabricating police reports. They were attempting to cover up the Unconstitutional arrest and Rhode Island Statute by fabricating a warrant and finding a Judge who would retroactively approve the affidavit and sign the arrest warrant.

§12-29-3 section (b)(3) has been in effect since 1988 and thousands if not tens of thousands of unconstitutional arrests have been made without a warrant while police officers arrogated themselves the authority to make the judicial determinations of probable cause to arrest by using the warrantless provisión of thésssubsection.

On or about August 14th, 2004, I filed the first of two Federal §2254 Petitions raising Federal Questions. These were assigned case#s o4-361-M and 05-109-S. The first was assigned to U.S.D.C. Judge Mary Lisi and Magistrate Robert Lovegreen.andtlater Magistrate David L. Martin. However as soon as Judge Mary Lisiadvised me to refile a class action in/re to 04-361-M she withdrew without explanation and Magistrate Judge Lincoln D. Almond and Judge William E. Smith took over.

Now Magistrate Judge Lincoln D. ALmond and Judge William E. Smith were once again in aposition to cover up the Unconstitutional Statute and arrests for the State of Rhode Island. This manuevering resembles Judge shopping and does not avoid the appearance of impropriety.

Assistant Rhode Island Attorney General Stephen A. Regine's voluminous lies are uncoverable but that did not stop Magistrate Judge Lincoln D. Almond from trying,

(a) Stephen Regine'in two memos, event#43 of 04-361-S and event#12 of 05-109-S page 1 footnote 2 Lies,

> "to the best of his knowledge and belief, I was
> taken to the Pawtucket Police Station by the
> North Smithfield Police."

Magistrate Judge Lincoln D. Almond took this lie one step further and ebellished it to,

> "I voluntarily entered the Pawtucket Police Station."

(b) Stephen Regine does not mention the criminal contempt adjudicatio that he sought and only refers to that previous procedure as a bail revocation procedure. Magistrate Judge Lincoln D. Almond then follows hisllead and cites case law which only pertains to bail revocation even though Stephen Regine himself supplied the court in both memos with

my attorney Mark Smith's,

**"Motion to Suspend the Criminal Contempt and Bail Revocation Hearing."**

At the time of my arrest on July 28th,2004, at approximately 5:09 pm. I was at home minding my own bussiness. There were no exingent or emergency circumstances that would justify a warrantless arrest. Detective Napolean Gonsalves had no warrant, had no oath or affirmation, had no complaint in writing, did not bother tocorroborate or not corroborate Barbara E. Cayer's story, and did not even bother to establish probable cause because §12-29-3 section (b)(3) allowed him to circumvent those Constitutional requirements.

I have since been held in pretrial confinement in excess of twenty (20) months even though no prompt, fair, or reliable determination of probable cause has ever been made by a neutral and detached judicial officer.

The Fourth U.S.C.A. Amendment is as follows;

> **The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except upon probable cause supported by oath or affirmation describing the place to be searched, and the person or things to be seized.**

Article 1 section 6 of the Rhode Island Constitution, the Fourth Amendment's counterpart, is as follows;

> **The right of the people to be secure in their persons, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but on complaint in writing, upon probable cause, supported by oath or affirmation and describing as nearly as may be the person or thing to be siezed.**

Article 1 section 6 of the Rhode Island Constitution is as follows;

> **this Constitution shall be the supreme Law of the State, and any law inconsistant therewith shall be void.**

Article 6 of the United States Constitution is as follows, pertainant parts;

> **This constitution and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the Supreme law of the land -----**

**and the judges in every shall be bound thereby**
**any thing in the constitution or laws of any state to the contrary notwithstanding.**

**The senators and representatives before mentioned, and the members of the several state legislatures, and all executives and judicial officers, both of the United States and of the several states, shall be bound by oath or affirmation to support this Constitution;**

I believe it is clear that § 12-29-3 subpart (b)(3) circunvents and supplants the Fourt Amendment's requirements as well as the Rhode Island Counterpart Article 6ssection 1.

**Constitutional Law (—— 36.**
**Duty of Legislature to obey constitutional mandate.**
a statute or rule cannot circumvent or supplant Constitutional requirements. (United States Currency, 183 ARIZ. @ 213, 902 P2d @ 356.

**N.D. Ala. 1999** It is fundamental aspect of Alabama Jurisprudence that legislature may not by statute modify, alter, or amend a Constitutional right.
**In re Robinson, 240 B.R. 70.**

It appears that the Rhode Island legislature passed a statute or at least a subpart thereof that circumvents and supplants of United States and Rhode Island Constitutional requirements.

It appears that § 12-29-3 subpart (b)(3) not only circumvents and supplants the Constitutional requirements of the Fourt Amendment of the United States Constitution, Article 1 section 6 of the Rhode Island Covstitution, but also is in conflict with Rule 3 of the District and Superior Court Rules of Criminal Procedure as follows;

**3. The complaint.—— The complaint is a written statement setting forth the offense charged. It shall be made upon oath before a judge of the District Court or an officer**

**empowered to issue warrants against persons charged with committing criminal offenses. If the defendant is not in custody or before the court, the judge or other officer shall examine under oath the complainant and any witnesses he or she may produce, and shall require thier statements be reduced to writing and sworn to by the persons making them.**

When there is a conflict between the Rule and a Statute the Rule prevails.

**8-6-2 Rules of practice and procedure.--(a)** The Supreme Court the Superior Court, and the District Court, by a majority of their members, shall have the power to make rules for requlating practice, procedure, and business therein. The Rules of the superior, family, and districy court shall be subject to the approval of the supreme court, such rules when effective, shall supersede any statutory regulation in conflict therewith.

If this petitioner is in fact correct then § 12-29-3 subpart (b)(3) is not only contrary to and an unreasonable application of the Constitutional requirements of the Fourth Amendment to the United States Constitution and Article 1 section 6 of the Rhode Island Constitution, its counterpart but is also in conflict with Rule 3 of the Rules of Criminal Procedure for both the District and Superior Courts of Rhode Island.

[W]herefore, petitioner moves this honorable court to grant his petition for a certificate of appealability. Once again the Honorable Judge William E. Smith has not responded to my notice of appeal and certificate of appaelability nor have the clerks provided me with any denials as required by the Rules.

This petitioner has been arrested and held in pretrial confinement for over 20 months in violation of the Fourth U.S. Contitutional Amendment which requires a prompt, reliable, and fair determination of probable cause.

DATED MARCH 5, 2006. Respectfully

DATED MARCH 5, 2006.

Respectfully
Submitted,

James J Silva
James J Silva

:CERTIFICATION:

I do hereby certify that on this the 30th day of MARCH 2006 I did cause to be ~~mailed~~ REMAILED a true and accurate copy of the enclosed 15 page document to the Office of the Attorney General at 150 South Main Street, Providence, Rhode Island. 02903.

James J Silva

THE R.I. DEPT OF CORRECTIONS IS LIMITTING ME TO 20 PHOTOCOPIES PER WEEK. SO I WILL NOT BE ABLE TO MAIL THE ATTORNEY GENERAL THEIR COPY FOR TWO WEEKS. 3-11-06

James J Silva
James J Silva.

EXHIBIT 1

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
DEPARTMENT OF THE ATTORNEY GENERAL
150 South Main Street
Providence, Rhode Island 02903
Patrick C. Lynch, Attorney General

# 46(g) Bail Violation

**September 16, 2004**

STATE OF RHODE ISLAND

V.

JAMES SILVA (DOB: 5-5-53)

**DISTRICT COURT CASE NO.**
**62/2004-14367**
**CT.1**

The defendant in the above-entitled matter is considered an alleged violator of the conditions of his bail in that he failed to keep the peace and be of good behavior. The defendant appeared before the District Court on the above-entitled Felony Complaint and bail was set in the amount of $1.000 cash, which occurred on July 29, 2004.

The Attorney General now seeks to have the defendant adjudged a bail violator pursuant to Rule 46(g) of the District Court Rules of Criminal Procedure and adjudged in contempt of Court pursuant to Rule 46(e) & 42(b) of the Dis. Ct. Rules of Criminal Procedure.

The Attorney General specifies the following as grounds upon which this violation is sought:

**The defendant has not kept the peace and been of good behavior based upon the following:**

- **Please see attached police reports from the Pawtucket Police Department regarding threatening letters the defendant has sent from the ACI since his initial appearance before the Court on July 29th, 2004.**
- **Please see attached copies of the above referenced letters.**

Stephen A. Regine AAG
Assistant Attorney General
9/16/04

A copy of this statement was furnished to the defendant on the 16th day of September, 2004. SAR/AAG (Hand-delivered in Court to Defendant, James Silva) Stephen A. Regine AAG

STATE OF RHODE ISLANDDAND PROVIDENCE PLANTATIONS

PROVIDENCE, Sc.

SIXTH DIVISION
DISTRICT COURT

STATE OF RHODE ISLAND
VS.
JAMES J. SILVA

case no.-62-2004-14367
-62-2004-18930

**HEARD BEFORE THE HONORABLE MS. JUSTICE PATRICIA MOORE.**
**NOVEMBER 9, 2004.**

**APPEARANCES:**
**STEPHEN A. REGINE**
**FOR THE STATE**

**JAMES J. SILVA**
**FOR THE DEFENDANT**

**CERTIFICATION.**

I, James J. Silva, herby certify that the succeeding pages, 1 through 4 , are a substantially verbatim and accurate transcript from the tape recording.

Judge Moore: -----and is not able to be here, um-
Defendant: I object to that motion your honor, not to interupt.
Judge Moore: all right. so do you want to be heard from. the State?
AG. Regine: Yes Judge, If I may. I saw Mr. Smith earlier today and I had recieved his motion to suspend and withdraw based upon the um, comments that he placed in the motion. However, in the meantime um, and obviously we were going to begin the defense case and they were going to begin calling witnesses, the defendant has been arraigned in Superior Court on this underlying charge and the Department of Corrections has actually now changed the committment from held without bail, which it originally was back to cash bail on the Superior Court number. And the State has simply at this time made a decision to withdraw the 46 (g) and simply proceed in Superior Court on the uh, the pending Superior Court case as well as the pending District Court case which we have which is the uh, stalking charge which we had uh, initially arraigned him on. So at this time Judge I've made a decision although we have presented evidence and had a hearing on October 12th um, and called a number of witnesses that I am going to with -draw the previously filed 46 (g) and I ask to withdraw the 3 exhibits that I have entered and I'll turn them over to the detective at this time um, uh, to be put back into evidence.
Defendant: I---
Judge Moore: Just, Just a second, the exhibits are here in an envelope and I just want to put on the record that these exhibits have been in my desk drawer since the last hearing. They have not been in the clerk's office so there hasn't been a chance for anyone to uh, have anything to do with these exhibits. Ok, so do you want to be heard, Mr. Silva?
Defendant: Yes your Honor. uh, I'm going to take control of my own defense here, um, Mr. Smith and I have had a disagreement, now I haven't moved to have him removed though we have had a disagreement and I haven't spoke to him since the last time However, I'm going to object to Mr. Regine making a motion to withdraw here. I have the same panoply of rights at a bail violation hearing as I do at a probation violation hearing and jeopardy has

attached here. Mr. Regine presented evidence, we, we've litigated they've been cross examined, exhibits have been entered, I've been placed in jeopardy. I'm entitled to a final judgment, I'm entitled to a defense, I'm entitled to present witnesses and evidence. I mean this goes to CHASE, we're talking about colatteral estopell here. Alright, now furthermore, the last time that we left here on the 12th, you had ordered Mr. Regine and my attorney, Mark Smith, to supply memorandums of, of law in support of whether or not someone who hasn't posted bail could be found to be a bail violator. And this is going to be a huge issue here. It's a matter of first impression as far as I can tell. I've been placed in jeopardy. You're not going to circumvent the jeopardy I've been placed in. I've had to appear in court, witnesses and evidence presented, now all of a sudden he just wants to cicumvent a final and valid judgment on the bail revocation hearing by Criminally Informationing me and moving me into the Providence Superior Court when he hasn't even established probable cause for my arrest yet. There's been no affidavit and arrest warrant signed by a Police Officer here. I've got a Rule 5 C preliminary hearing motion in, I've got a motion to reduce bail, motion to dismiss, and this case# here, 6204 that I'm here for today 6204-1 what is it? 14367 is not even in the system anymore alright. It was removed prior to us being here today, when they Criminally Informationed me on the 14th it was removed from the system. It was a tactic to prevent a final and valid judgment

Judge Moore: Ok. its my understanding that this gentlemen has actually been == to Superior Court?

AG. Regine: Yes.

Judge Moore: Actually been arraigned in Superior Court?

AG. Regine: He has.

Judge Moore: The case now has a Superior Court number?

AG. Regine: That's correct.

Judge Moore: And what is the Superior Court number?

Defendant: P204-3106A.

AG. Regine: 3106A, and when, when Mr. Silva talks about um, the uh, the fact that, um, the system, the case has been removed from the system and he's been prejudiced, he actually hasn't because the Department of Corrections took the P204 Criminal Information

when he was arraigned in front of Magistrate Macatee and cash bail was set at $2000 cash and placed that in lieu of the 6204 number and wiped out the hold without bail, so that's to his advantage.

Defendant: Your Honor I'm entitled to a Final and Valid Judgment here. But not only am I entitled to a Final and Valid Judgment, I'm entitled to a direct appeal if I'm not happy with that final and valid judgment. I've been placed in jeopardy here and you can't allow this to happen. You have control over this right now and I'm waiting for your decision when this is over.

Judge Moore: Ok. well I'm gonna give it to you right now. I think that the AG has a right to withdraw the bail violation. I think there's an issue here that when the case actually goes to the Superior Court and the Superior Court takes the case whether we even have any jurisdiction over it. If the bail violation hearing had been finished before the date of the Superior Court arraignment it would be a totally different set of facts. But I think once the case goes to Superior Court and you actually go before the Superior Court. Anything that we have to do with it is gone. So I'm gonna, obviously this is an appealable issue. I am going to allow ah, the AG to withdraw the bail violation. Now this still raises the issue about what Mr. Smith wants to do whether he is going to withdraw or not. I don't know whether his entry is for everything or just for this violation hearing.

Defendant: Your honor.

Judge Moore: If you object to him withdrawing then we'll leave that issue for another day.

Defendant: I'm objecting to him withdrawing your honor.

Judge Moore: No no not him withdrawing the bail violation, whether you object to Mr. Smith withdrawing as your attorney.

Defendant: I'm objecting to both, your honor. You know that jeopardy attaches in a civil matter when evidence is enterd and testimony is taken. You can't say I haven't been placed in jeopardy here. The case law is clear.

Judge Moore: Ok, well, you and I do not agree. I think the AG has aright in this set of circumstances to withdraw a bail violation. I'll make a note in the file Defendant objects to Mark Smith withdrawing. So that matter is not resolved.

Defendant: I also object to withdrawing the violation your honor

too. I want that on the record.

Judge Moore: I understand that. I understand that you object to that.

Defendant: I filed a motion to Quash the Criminal Information too, so we'll be back here.

Judge Moore: **Defendant objects to AG withdrawing the bail violation. Court allows the AG to withdraw the bail violation. Ok, these are the exhibits that go back to the police department. Its on the record I do not have them anymore.**

AG. Regine: Thank you. Let the record reflect that I am taking the exhibits and turning them back over to Detective Gonsalves.

Judge Moore: A representation has been made that there is no more held without bail as to this case.

AG. Regine: That's correct .

Judge Moore: He is now on Superior Court bail?

AG. Regine: That's correct.

Thank you your Honor.

The end.

Dated February 11th, 2004.

James J. Silva Pro/se.

EXHIBIT 3

**KENNETH C. VALE**
ATTORNEY AT LAW
63 SOCKANOSSET CROSS ROAD, SUITE 2B
CRANSTON, RHODE ISLAND 02920

TELEPHONE
(401) 463-9445

FAX
(401) 463-3449

March 15. 2005

Mr. James J. Silva
ISC H-225 Bottom
P.O. Box 8249
Cranston, RI 02920

**Re:** **State v. Silva**
**Case No.:** **P2/2004-3106A**

Dear Mr. Silva:

I appeared in Providence Superior Court this morning before Ms. Justice McGuirl for hearing on the *pro se* Motion to Dismiss you filed, and before Mr. Justice Krause for a pretrial conference in the above case.

Ms. Justice McGuirl ordered Assistant Attorney General Regine to file his responsive memorandum, and set the matter down for hearing before Ms. Justice McGuirl on *April 5, 2005*. I will provide you with a copy of Assistant Attorney General Regine's memorandum immediately upon my receipt thereof. As we discussed, *you* will be arguing your *pro se* Motion to Dismiss.

When I appeared before Mr. Justice Krause this morning, I passed your case for trial.

I have enclosed copies of the State's Answer to Defendant's Motion for Discovery and Inspection, and the State's Request for Discovery and Alibi.

Very truly yours,

Kenneth C. Vale

Kenneth C. Vale

KCV/bsv
Enclosures

EXHIBIT 4

**KENNETH C. VALE**
ATTORNEY AT LAW
63 SOCKANOSSET CROSS ROAD, SUITE 2B
CRANSTON, RHODE ISLAND 02920

TELEPHONE
(401) 463-9445

FAX
(401) 463-3449

March 21, 2005

Mr. James J. Silva - 66350
ISC H-225 Bottom
P.O. Box 8249
Cranston, RI 02920

**Re:** **State v. Silva**
**Case No.:** **P2/2004-3106A**

Dear Mr. Silva:

Thank you for your letter dated March 15, 2005, which I received today. I wrote to you on March 15, 2005. Our letters obviously crossed in the mail.

I already gave you a copy of the Motion for Discovery and Inspection that I filed in P2/2004-3106A; nonetheless, I have enclosed another copy for your convenience. I have also enclosed a copy of your *pro se* Motion to Dismiss.

As you are aware from reading my March 15, 2005 letter, your next court date is April 5, 2005, at which time you will argue your Motion to Dismiss.

Your stalking case is scheduled for a pretrial conference on May 6, 2005.

Very truly yours,

Kenneth C. Vale

Kenneth C. Vale

KCV/bsv
Enclosures